**Raymond DeLeon MARTINEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 70988.**

Court of Criminal Appeals of Texas,

June 16, 1993.

Rehearing Denied Oct. 20, 1993.

Eugene Jones, court appointed on appeal, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Carol M. Cameron and Roberto Gutierrez, Asst. Dist. Attys., Houston, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION

BAIRD, Judge.

Appellant was convicted of capital murder. Tex.Penal Code Ann. § 19.03(a)(2).[1] The jury affirmatively answered the statutory punishment issues under Tex.Code Crim. Proc.Ann. art. 37.071.[2] Appellant was sentenced to death. *Id.* at (e). Appeal to this Court is automatic. *Id.* at (h). We will affirm.

Appellant does not challenge the sufficiency of the evidence to sustain either his conviction or the affirmative answers to the statutory punishment issues. Therefore, we will set forth only those facts necessary to the disposition of the points of error.

## II.

### Insanity

■■■ In point of error two, appellant contends the State failed to prove his sanity had been restored after a prior adjudication of insanity.[3] There is a general presumption of sanity and the defendant bears the burden of proving, by a preponderance of the evidence, his insanity at the time of the conduct charged. *Riley v. State*, 830 S.W.2d 584, 585 (Tex.Cr.App.1992). *See also, Breland v. State*, 489 S.W.2d 623 (Tex.Cr.App.1973). However, if a prior unvacated adjudication of insanity is shown, the burden shifts to the State to prove, beyond a reasonable doubt, the defendant was sane at the time of the conduct charged. *Breland*, 489 S.W.2d at 625; *and, Manning v. State*, 730 S.W.2d 744, 748 (Tex.Cr.App.1987).

Appellant filed a pretrial Motion Of Intention to Show Defendant Was Under A Judgment Of Insanity At The Time Of Commission Of This Offense. At the motion hearing, documents were tendered which purported to show that appellant was adjudicated insane by a jury on April 10, 1967, in Cause No. 8775, in the District Court of Comanche County. The documents further indicate that on October 21, 1968, in the same cause, a jury determined appellant was sane. Finally, on June 30, 1969, the superintendent of Rusk State Hospital notified that trial judge that appellant had been discharged because of the restoration of his sanity.

■■ Appellant objected to the documents, contending they were not properly authenticated or certified. *See,* Tex.R.Crim.Evid. 901. The trial judge withheld his ruling and recessed the hearing to allow the parties to review the documents and address the issues raised. However, the hearing never resumed and the trial judge never ruled on the motion. Therefore, appellant's complaint on appeal is not preserved. Tex.R.App.P. 52(a).

However, assuming arguendo the point was preserved, we find appellant's sanity was not an issue at his trial for the instant offense. At the aforementioned hearing, appellant's counsel stated:

> Yes, sir, Judge, although we'd like the record to reflect that at this point in time *we are not now saying that the defendant is either incompetent to stand trial or that he was insane* at the time he committed the offense for which he's about to go on trial again....[4]

1. Tex.Penal Code Ann. § 19.03(a)(2) provides in part:
 (a) A person commits an offense if he commits murder as defined under Section 19.-02(a)(1) of this code and:
 (2) the person intentionally commits the murder in the course of committing or attempting to commit ... robbery,....

2. Appellant was convicted on October 12, 1989. At that time art. 37.071(b) provided in part:
 (b) On conclusion of the presentation of the evidence, the court shall submit the following three issues to the jury:
 (1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reason-

able expectation that the death of the deceased or another would result;
 (2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society....

3. Point of error two states:
 The evidence is insufficient to show that appellant's sanity was restored at the time of the offense.

4. Unless otherwise indicated, all emphasis is supplied.

■ Insanity is an affirmative defense. Tex.Penal Code Ann. § 8.01.[5] In order to raise insanity, appellant must notify the trial judge and State of his intent to present the defense. Tex.Code Crim.Proc.Ann. art. 46.03 § 2 provides:

(a) A defendant planning to offer evidence of the insanity defense shall file a notice of his intention to offer such evidence with the court and the prosecuting attorney:

(1) at least 10 days prior to the date the case is set for trial; or

(2) if the court sets a pretrial hearing before the 10-day period, the defendant shall give notice at the hearing; or

(3) if the defendant raises the issue of his incompetency to stand trial before the 10-day period, he shall at the same time file notice of his intention to offer evidence of the insanity defense.

(b) Unless notice is timely filed pursuant to Subsection (a) of this section, evidence on the insanity defense is not admissible unless the court finds that good cause exists for failure to give notice.

It is undisputed that appellant failed to comply with art. 46.03 § 2. Furthermore, appellant did not pursue an insanity defense before the jury or request the jury be instructed on the issue of insanity.

■ Having failed to raise the affirmative defense of insanity at trial, appellant now seeks the benefit of the shifting burden of proof of a prior adjudication of insanity. However, we hold the burden does not shift unless and until appellant raises the defense of insanity. Point of error two is overruled.

## III.

### Individual Voir Dire

In point of error three, appellant contends he was precluded from conducting individual voir dire of the venire.[6]

### A. The Facts

The voir dire was conducted as follows: veniremembers were summoned in panels and the trial judge explained the operation and effect of our capital sentencing scheme. Each party then addressed the panel members *individually*, concerning the death penalty and related issues. When a sufficient number of veniremembers were qualified, a general voir dire was conducted. After the general voir dire, the parties exercised their peremptory challenges and the jury was selected.

Appellant objected to this procedure:

Appellant: Are those all the legal issues that the Court intends to go over with them? I would object if you are going to do it this way. By not going into the burden of proof, the failure to testify, not explaining those things to the jury as well as accomplice witness, parties, let's see ...

The Court: You can certainly go over that.

Appellant: ... we would ask that the Court go into each prospective juror with those matters, whether strictly legal, so we could see whether or not they understand all those matters in connection with the trial. We would ask the Court to go into those matters, not any factual things about the stuff that would be on these [juror information questionnaires] sheets ... We would ask that the Court go into those matters. If the Court is going to proceed in that fashion, we feel [the parties] have a right to know [the venire member's] feelings about all of the law that we believe will or may be applicable to the case as opposed to doing, leaving some of the law for a general voir dire as we do in ordinary felonies.

At any rate, Judge, those are matters ...

The Court: I may very well do that.

---

5. Tex.Penal Code Ann. § 8.01(a) provides:
 It is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong.

6. Point of error three states:
 The trial court violated appellant's right to separate voir dire of capital murder potential jurors.

Appellant: ... that we are concerned about.

The Court: I may very well and I will let you know.

Appellant was allowed to *individually* question each veniremember concerning issues relevant to capital murder. At that time, appellant objected that he was not allowed to individually voir dire on the lesser included offense of murder. The trial judge ruled that such questions, "as well as any other general questions," should be asked during the general voir dire.

### B. Preservation for Review

■ The State contends this point is not preserved for our review. In order to properly preserve an issue for appellate review, the defendant must make a timely request, objection, or motion, stating the specific grounds for the ruling he desired the trial judge to make. Tex.R.App.P. 52(a). The objection must be made at the earliest possible opportunity and the "point of error must correspond to the objection made at trial." *Turner v. State*, 805 S.W.2d 423, 431 (Tex.Cr. App.1991). We find appellant's objection sufficient under Rule 52(a). The point is preserved for our review.

### C. The Merits

■ "The conduct of voir dire examination rests within the sound discretion of the trial court, and ... only abuse of such discretion will call for reversal on appeal." *Clark v. State*, 608 S.W.2d 667, 669 (Tex.Cr.App. 1980) (citations omitted). We have long recognized that the legal procedures and principles surrounding capital punishment are best addressed by individual voir dire. *See*, Tex. Code Crim.Proc.Ann. art. 35.17, *Special Commentary*, Hon. John F. Onion, Jr. Indeed, individual voir dire is available only where the State seeks the death penalty. Art. 35.17(2) provides:

In a capital felony case in which the State seeks the death penalty, the court shall propound to the entire panel of prospective jurors questions concerning the principles, as applicable to the case on trial, of reasonable doubt, burden of proof, return of indictment by grand jury, presumption of innocence, and opinion.[7] Then, on demand of the State or defendant, either is entitled to examine each juror on voir dire individually and apart from the entire panel, and may further question the juror on the principle propounded by the court.

We have held that Art. 35.17 "does not in any way purport to restrict the discretion of the trial judge in conducting voir dire." *Williams v. State*, 668 S.W.2d 692, 701 (Tex. Cr.App.1983).

Appellant contends his case is analogous to *Batten v. State*, 533 S.W.2d 788 (Tex.Cr.App. 1976), where we held "the trial court ... erred in refusing the demand to have the jurors examined on voir dire individually and apart from the entire panel." *Id.*, at 793. However, we believe the instant case is more akin to *Barnard v. State*, 730 S.W.2d 703 (Tex.Cr.App.1987), where "the trial court informed the participants that in order to save time, prior to the individual voir dire of the venireman, he would give each side an opportunity to voir dire the entire panel regarding general principles of the law and acquaint them with the case." *Id.*, at 715. We held the procedure was not an abuse of discretion. *Id.*, at 716.

In the instant case, appellant was allowed to individually voir dire the veniremembers as to the law relating to capital murder.[8] The procedure employed by the trial judge in this case satisfies art. 35.17(2). Point of error three is overruled.

### IV.

### Formation of the Venire

■ In his fourth point of error, appellant contends the Harris County jury selection procedures wrongly excluded minorities, denying him a venire representing a fair

---

7. We have held that "opinion" includes questions concerning the veniremembers "knowledge of the case," *Esquivel v. State*, 595 S.W.2d 516, 522 (Tex.Cr.App.1980).

8. Appellant does not contend that the time limits imposed by the trial judge restricted his individual voir dire. *See*, *McCarter v. State*, 837 S.W.2d 117 (Tex.Cr.App.1992).

cross-section of the community.[9] At the time of appellant's trial Tex.Gov't Code Ann. § 62.001(c) provided:

> In a county in which the municipality with the largest population is located in more than one county, the jury wheel *may*, on approval of the commissioners court and a majority of the district judges having jurisdiction in the county, be reconstituted by using, as an additional source, all names on the current list to be furnished by the Department of Public Safety, showing the citizens of the county who hold a valid Texas driver's license other than a Class P. The county may contract with another governmental unit or a private person to combine the voter registration list with the list furnished by the Department of Public Safety.

Acts 1989, 71st Leg., ch. 132, § 1, eff. Sept. 1, 1989.[10] Appellant contends that § 62.001(c) conferred a right to a venire summoned not only from a list of registered voters, but those county residents holding a valid driver's license.

Appellant moved to quash the venire and for a recess to allow the formation of a venire from all residents in Harris County holding a valid driver's license. At the hearing, evidence established that the venire in appellant's case was summoned approximately fifteen days prior to September 5, 1989, the appearance date. Marion Ceboski, Harris County "jury clerk," testified the venire was

selected from a "master list" compiled prior to October 5, 1987, using the names of the registered voters in Harris County.

At the time of appellant's trial, Tex.Gov't Code Ann. § 62.001(c) was discretionary. It allowed a county to expand its jury list, provided the commissioners court and district judges agreed to do so. There was no evidence that the Harris County commissioner's court or the district judges so agreed. There being no statutory requirement that the jury wheel include all persons holding a valid driver's license, we find the trial judge did not err in overruling appellant's motion.[11] Point of error four is overruled.

## V.

### Defining Deliberately

In points of error five and seven, appellant contends the trial judge erroneously defined "deliberately" at voir dire and in the punishment charge.[12] At voir dire, the trial judge instructed the jury that deliberately:

> ... means a manner of doing an act characterized by or resulting from careful consideration. It is a conscious decision involving a thought process which embraces more than a mere willingness to engage in the conduct.

The punishment charge defined deliberately as follows:

Acts 1991, 72nd Leg., ch. 442, § 1, eff. Jan. 1, 1992.

---

9. Point of error four states:
 The trial court erred in overruling appellant's objection to the selection of members of the jury pool in a manner which precluded a significant minority population of the convicting county.

10. Tex.Gov't Code Ann. § 62.001 was again amended in 1991. § 62.001 now provides:
 (a) The jury wheel *must* be reconstituted by using, as the source:
 (1) the names of all persons on the current voter registration lists from all the precincts in the county; and
 (2) all names on a current list to be furnished by the Department of Public Safety, showing the citizens of the county who hold a valid Texas driver's license and the citizens of the county, other than persons who are disqualified from jury service, who hold a valid personal identification card or certificate issued by the department.

11. We have previously held there is no constitutional violation in the use of a voter registration list to summon a venire. *DeBlanc v. State*, 799 S.W.2d 701, 708 (Tex.Cr.App.1990); and, *Shelby v. State*, 479 S.W.2d 31, 40 (Tex.Cr.App.1972). *See also, United States v. Test*, 550 F.2d 577, 581–593 (10th Cir.1976); and, *United States v. Arlt*, 567 F.2d 1295 (5th Cir.1978).

12. Point of error five states:
 The trial court erred in giving a definition of "deliberately" over defense objection during jury voir dire.
 Point of error seven states:
 The trial court erred in giving a definition of "deliberately" over defense objection in the court's jury charge on punishment.

As used in the first special issue, the word "deliberately" has a meaning different and distinct from the word "intentionally" as that word was previously defined in the charge on guilt.

The word "deliberately" as used in the first special issue means a manner of doing an act characterized by or resulting from careful consideration: "A conscious decision involving a thought process which embraces more than mere will to engage in the conduct."

The definition of deliberately has been a frequent issue in capital appeals. In *Russell v. State*, 665 S.W.2d 771, 780 (Tex.Cr.App. 1983), we held the trial judge need not define deliberately in the court's charge because the jury is presumed to know its ordinary and common meaning. We have deferred to the Legislature to clarify the difference between intentional and deliberate. *Lane v. State*, 743 S.W.2d 617, 627–628 (Tex.Cr.App.1987); *and, Russell*, 665 S.W.2d at 782.

In *Marquez v. State*, 725 S.W.2d 217 (Tex. Cr.App.1987), the jury was instructed:

As used in the first special issue, the word "deliberately" has a meaning different and distinct from the word "intentionally" as that word was previously defined in the charge on guilt and; the word "deliberately" as used in the first special issue means a manner of doing an act characterized by or resulting from careful consideration: "a conscious decision involving a thought process; conduct which embraces more than mere will to engage in the conduct."

*Id.* at 244. Marquez contended art. 37.071 was unconstitutional because a finding of deliberateness was necessarily made when the jury determines guilt in "an intentional killing." *Id.* at 243. We disagreed and held that deliberately and intentional had "different and distinct" meanings. However, we did not address the propriety of the trial judge's instruction.

This case presents our first opportunity to decide whether a trial judge errs in defining deliberately.[13] In reviewing the sufficiency of the evidence to support an affirmative answer to the first punishment issue we have held:

While this Court has properly insisted upon deferring to the Legislature the task of defining the term deliberate, we have approximated its meaning in accordance with "common usage" as something more than intentional, *Heckert v. State*, 612 S.W.2d 549, 552 (Tex.Cr.App.1981), and something less than premeditation, *Granviel v. State*, 552 S.W.2d 107, 123 (Tex.Cr. App.1976) *cert. denied*, 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 250 (1977), a "conscious decision involving a thought process which embraces more than mere will to engage in the conduct."

*Nichols v. State*, 754 S.W.2d 185, 201 (Tex. Cr.App.1988). Although the Legislature has not defined deliberate, we have consistently applied this definition in our analysis. *Id.*, at 201 n. 17.

Although we have never required that deliberate be defined, we have never precluded such a definition. In *Williams v. State*, 674 S.W.2d 315 (Tex.Cr.App.1984), we noted that "a definition of deliberate would have been helpful," *Id.* at 322, and we suggested the exact definition given in the instant case. *Id.* at 322, n. 6. Accordingly, we hold the trial judge did not err in defining deliberate. Points of error five and seven are overruled.

## VI.

### Arraignment

■ In point of error six, appellant contends the trial judge erred in failing to arraign him outside the presence of the jury.[14] The State contends appellant was arraigned outside the presence of the jury prior to his first trial. *See* at 320, n. 4, *supra*.

**13.** In *Satterwhite v. State*, 858 S.W.2d 412, 430 (Tex.Cr.App.1993), the defendant contended the trial judge erroneously instructed the jury on the definition of deliberately. However, the issue was not preserved for appellate review. *Id.*, at 430.

**14.** Point of error six states:

The Trial Court Erred in Failing to Formally Arraign Appellant Outside the Jury's Presence.

The purpose of arraignment is to fix the defendant's identity and hear the defendant's plea. Tex.Code Crim.Proc.Ann. art. 26.02. *See also, Collins v. State,* 548 S.W.2d 368, 375 (Tex.Cr.App.1976). Simply asking the defendant to plead to the indictment is *not* an arraignment. Tex.Code Crim.Proc.Ann. art. 36.01 requires:

(a) A jury being impaneled in any criminal action ... the cause shall proceed in the following order:

1. The indictment or information shall be read to the jury by the attorney prosecuting....

2. The special pleas, if any, shall be read by the defendant's counsel, *and if the plea of not guilty is also relied upon, it shall also be stated....*

In the instant case, the trial judge merely asked appellant to plead to the indictment, art. 36.01(a)(2), and did *not* arraign him in the presence of the jury.[15]

■ Appellant further contends he was entitled to be formally arraigned after the reversal of his initial conviction, and prior to his second trial. Appellant presents no legal authority for this contention. We have held:

... After arraignment once, at subsequent trials it is not necessary that it be repeated. *Shaw v. State,* 32 Tex.Cr.R. 155, 22 S.W. 588; *Sims v. State,* 36 Tex.Cr.R. 154, 36 S.W. 256; *Myers v. State,* 37 Tex. Cr.R. 331, 39 S.W. 938.

*Steen v. State,* 92 Tex.Crim. 99, 242 S.W. 1047, 1048 (App.1922). Point of error six is overruled.

## VIII.

### Psychiatric Testimony

■ In points of error nine and ten appellant contends the testimony of Dr. Walter Quijano, a psychiatrist, violated due process and denied appellant effective assistance of counsel.[16]

Prior to trial, appellant filed a motion to require the State to "provide a list of all punishment witnesses it intend[ed] to call and the order they will be called in and, further, what they are expected to testify about." Appellant further requested "that the State be required to give the defense immediately a list of any witnesses who did *not* testify at the first trial of this case and

15. The record reflects the following colloquy between the trial judge, the State and the attorney for appellant:

THE COURT: Good afternoon, ladies and gentlemen.
Mr. Gutierrez, if you would, please, present the indictment to the jury.
[Mr. Gutierrez]: Yes, Your Honor. If it please the Court.
In the name and by authority of the State of Texas: The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County, Texas, Raymond DeLeon Martinez, hereinafter styled the defendant, heretofore on or about July 13, 1983, did then and there unlawfully while in the course of committing and attempting to commit the robbery of Herman Chavis, hereinafter style [sic.] the complainant, intentionally cause [sic.] the death of the complainant by shooting the complainant with a firearm. Against the peace and dignity of the State.
And that is signed by a Foreman of the Grand Jury.
THE COURT: To which indictment, Mr. Martinez, how do you plead, guilty or not guilty? {Whereupon, the following proceedings were held at the Bench outside the hearing of the jury as follows:}

[Mr. Montgomery]: Judge, we would object to the fact that he has not been formally arraigned before being required to plead to the indictment.
THE COURT: Six years ago.
[Mr. Montgomery]: So be it.
THE COURT: Do you want to enter his plea for him or you want him to?
[Mr. Montgomery]: Note our objection.
{Whereupon, the following proceedings were had in the presence and hearing of jury as follows:}
THE COURT: To which indictment, Mr. Martinez, how do you plead, guilty or not guilty?
[Mr. Castillo]: Not guilty, Your Honor.
THE COURT: Call your first, please or proceed to make an opening statement.
[Mr. Gutierrez]: Yes, Your Honor.

16. Point of error nine states:

The trial judge erred by allowing the prosecution to present psychological evidence at punishment with [out] sufficient notice in violation of due process guarantees.
Point of error ten states:
The trial judge erred by allowing the prosecution to present psychological evidence at punishment without sufficient notice thereby denying appellant effective assistance of court appointed trial counsel.

designate what their testimony will be and, further, at which phase of the trial they will be called." At the hearing on the motion, the trial judge instructed the State:

> If you have any witnesses as to the question of punishment who were not specifically called at the punishment phase of the last trial please give them to the Defense.

The State agreed to provide a list of the witnesses as follows:

> The State: I don't mind doing it on an ongoing basis, but I would like the record to reflect I am opening my file, I have opened my file and I plan to leave it open during voir dire and during all the time, and what I would prefer is to have ongoing dialogue on a daily basis so I can keep him abreast of what's going on. I don't mind doing that.
>
> Appellant: Sounds reasonable to me, Judge.

After appellant's conviction, but prior to the punishment phase, the trial judge and parties discussed the State's punishment witnesses. The prosecutor informed the trial judge and appellant that efforts were being made to locate a psychiatrist to testify concerning the second punishment issue.[17] The prosecutor agreed to promptly notify appellant's attorney of any additional witnesses as they were known. On Sunday evening the prosecutor called appellant's counsel and provided Quijano's name and a description of the testimony to be offered. The following Tuesday, appellant objected to Quijano's testimony because the State failed to list Quijano as a witness. The trial judge allowed Quijano to testify.

 Notice of the State's witnesses shall be given upon request. *Young v. State*, 547 S.W.2d 23, 27 (Tex.Cr.App.1977). If the trial judge allows a witness to testify who does not appear on the State's witness list, we consider whether the prosecutor's actions constitute "bad faith" and whether the defendant could have reasonably anticipated the witness' testimony. *Stoker v. State*, 788 S.W.2d 1, 15 (Tex.Cr.App.1989). *See, Nobles v. State*, 843 S.W.2d 503, 515 (Tex.Cr.App. 1992); *Bridge v. State*, 726 S.W.2d 558, 566 (Tex.Cr.App.1986); *and, Hightower v. State*, 629 S.W.2d 920, 925 (Tex.Cr.App.1981).

Appellant agreed to an "ongoing dialogue" regarding supplementation of the State's witness list. On several occasions the prosecutor indicated he was attempting to locate an expert witness to testify concerning the second punishment issue. When Quijano was located, appellant's attorney was promptly notified. We conclude the prosecutor did not act in bad faith.

Expert testimony by psychologists and psychiatrists regarding the second punishment issue is commonplace. *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); *Barefoot v. Estelle*, 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983); *Holloway v. State*, 613 S.W.2d 497, 502–503 (Tex.Cr.App.1981); *Fuller v. State*, 829 S.W.2d 191, 195 (Tex.Cr.App.1992); *Amos v. State*, 819 S.W.2d 156, 162 (Tex.Cr. App.1991); *Cook v. State*, 821 S.W.2d 600, 602 (Tex.Cr.App.1991); *and, Stoker*, 788 S.W.2d at 8. In light of the widespread use of the testimony, coupled with the prosecutor's statements regarding his desire to present this type of testimony, appellant should have reasonably anticipated such testimony. Accordingly, we hold the trial judge did not abuse his discretion in allowing Quijano to testify. Points of error nine and ten are overruled.

 In point of error eleven, appellant contends the trial judge erred in allowing Quijano to remain in the courtroom during the testimony of appellant's brother and sister.[18] Tex.R.Crim.Evid. 613 provides:

> At the request of a party the court shall order witnesses excluded so that they can-

---

17. The prosecutor explained that a psychiatrist was needed because the trial judge had indicated appellant's records from the Texas Department of Corrections, including psychiatric evidence and evidence demonstrating appellant's twenty-five instances of misconduct during his initial stay on death row, were inadmissible.

18. Point of error eleven states:

> The trial court erred by allowing the state's psychologist to listen to testimony of key punishment witnesses in violation of the witness rule.

not hear the testimony of other witnesses, and it may make the order on its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a defendant which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause, or (4) the victim, unless the victim is to testify and the court determines that the victim's testimony would be materially affected if the victim hears other testimony at trial.

The purpose behind Rule 613 is to "prevent the testimony of one witness from influencing the testimony of another." *Cook v. State*, 30 Tex.App. 607, 18 S.W. 412 (1892). *See, Webb v. State*, 766 S.W.2d 236, 239 (Tex.Cr.App. 1989). Appellate review of a violation of the rule is limited to whether the trial judge abused his discretion. *Guerra v. State*, 771 S.W.2d 453, 475–476 (Tex.Cr.App.1988).

In *Lewis v. State*, 486 S.W.2d 104, 106 (Tex.Cr.App.1972), we held:

The trial court is vested with discretion and may permit expert witnesses to be exempt from the rule in order that they may hear other witnesses testify and then base their opinion on such testimony.

*See also, Carlile v. State*, 451 S.W.2d 511, 512 (Tex.Cr.App.1970).

Quijano was to give his expert opinion whether appellant would constitute a continuing threat to society. Therefore, we cannot say that the trial judge abused his discretion in allowing Quijano to observe the testimony of appellant's brother and sister. Point of error eleven is overruled.

■ In point of error thirteen appellant contends the trial judge erred in allowing Quijano to testify concerning the second punishment issue because Quijano was incapable of drawing a distinction between deliberate and premeditated. Appellant further contends Quijano did not have sufficiently detailed information as to allow him to make predictions about the appellant.[19] However, we have reviewed appellant's numerous trial objections and appellant did not make either of those objections at trial. When the objection at trial is different from the complaint raised on appeal, nothing is preserved for our review. *Rezac v. State*, 782 S.W.2d 869, 870 (Tex.Cr.App.1990). Point of error thirteen is overruled.

### IX.

### Motions For Continuance After Trial Has Begun

■ In his twelfth point of error, appellant contends the trial judge erred in denying his oral motion for a continuance.[20] After Quijano testified, and the State rested its punishment case, appellant requested a continuance to locate an expert witness to rebut Quijano's testimony. Appellant informed the trial judge he had located an expert who had declined to testify. The trial judge offered to recess the trial until the next morning to allow appellant an opportunity to locate a witness. Appellant agreed. The next morning appellant informed the trial judge he had contacted the same expert who again declined to testify. Counsel also informed the trial judge of an unsuccessful attempt to contact another expert.

Tex.Code Crim.Proc.Ann. art. 29.13 speaks to continuances after trial has begun. Art. 29.13 provides:

A continuance or postponement may be granted on the motion of the State or defendant after the trial has begun, when it is made to appear to the satisfaction of the court that by some unexpected occurrence since the trial began, which no reasonable diligence could have anticipated, the applicant is so taken by surprise that a fair trial cannot be had.

As previously noted in points of error nine and ten, appellant was well aware of the potential of the State calling an expert witness to testify at the punishment phase of

---

19. Point of error thirteen states:

The trial judge incorrectly allowed a psychologist to testify to his opinion about the future dangerousness special issue.

20. Point of error twelve states:

The trial judge erred in overruling appellant's requested continuance to secure rebuttal psychological expert testimony.

the trial. Therefore, we find Quijano's testimony was not an "unexpected occurrence since the trial began, which no reasonable diligence could have anticipated" and appellant was *not* "so taken by surprise that a fair trial [could] not be had." Accordingly, we hold the trial judge did not abuse his discretion in denying appellant's oral motion for continuance. Point of error twelve is overruled.

The judgment of the trial court is affirmed.

Publish in part. Only parts II., III., IV., V., VI., VIII., and IX., are designated for publication. The remainder of the opinion shall not be published. *Rabbani v. State,* 847 S.W.2d 555 (Tex.Cr.App.1992).

CLINTON, J., dissents, particularly to disposition of point 21 for reasons explicated in *Rios v. State,* 846 S.W.2d 310, at 316–317 (Tex.Cr.App.1992).

OVERSTREET, J., concurs in the result only.

MALONEY, J., concurs in the result reached in part III., dealing with point of error three, and otherwise joins the opinion.